In the Matter of the Application for a Subpœna Directed to WALTER S. ROBERTS and Another, Requiring Them to Testify under a Dedimus Potestatem Issued out of the Superior Court of the State of Rhode Island and Providence Plantations, County of Providence, in an Action Therein Pending Wherein COMMERCIAL CREDIT COMPANY, a Delaware Corporation, Is Plaintiff and ARACOMA TEXTILE CO., INC., a New York Corporation, and Others, are Defendants.

COMMERCIAL CREDIT COMPANY, Appellant; WALTER S. ROBERTS and Others, Respondents.

First Department, October 30, 1925.

Depositions — commission to take testimony within State for use without — purpose was to show existence of attachable property in foreign State — no application made to commissioner to terminate examination under subpœna issued under Civil Practice Act, §§ 310–312, and commissioner directed witnesses to appear at adjourned date — error for court on motion made before adjourned date to terminate examination — fact that in first examination property was discovered in foreign State sufficient to give court jurisdiction does not authorize termination — our courts give wide latitude to examination on commission and will not pass on competency or materiality of evidence.

It was error for the court to terminate the examination of witnesses, under a subpœna issued pursuant to sections 310–312 of the Civil Practice Act on a commission granted to take testimony in this State for use in another State, on a motion made after the first examination and before the adjourned date thereof, since it appears that the witnesses did not on the first examination demand of the commissioner that the examination terminate and the commissioner at the end of the first examination adjourned until a future date and directed the witnesses to appear before him for a further examination on that

date; an application to the commissioner to terminate the examination is a condition precedent to the granting of an order.

The fact that on the first examination sufficient attachable property was discovered in the foreign jurisdiction to give the courts thereof jurisdiction of the action, but not enough to satisfy the amount of the plaintiff's claim, did not justify the termination of the commission.

The courts of this State will not prejudge the materiality or the competency of the evidence in a cause pending in another jurisdiction and will afford the widest possible latitude in the conduct of the examinations under a commission to take testimony here for use in another State.

APPEAL by the Commercial Credit Company from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 15th day of January, 1925, terminating the examination of Walter S. Roberts and Reginald B. Hamilton, respondents, under a subpœna theretofore issued, pursuant to sections 310 to 312 of the Civil Practice Act, by a justice of the Supreme Court, New York county, directing their examination within the State for use without the State in a litigation pending in the courts of the State of Rhode Island.

*Milton P. Kupfer* [*Leo Oppenheimer* with him on the brief], for the appellant.

*Joseph S. Meadow,* for the respondents.

BURR, J.:

Petitioner claims that prior to April, 1924, Walter S. Roberts, one of the respondent witnesses, and a New York corporation which it is claimed he had caused to be formed, known as the Aracoma Textile Co., Inc., were and still are indebted to the Commercial Credit Company, petitioner, appellant, a Delaware corporation, in an amount in excess of $22,000; that in April, 1924, the petitioner, becoming possessed of information which led it to believe that Roberts and the Aracoma Company had property in the State of Rhode Island sufficient to respond to its $22,000 claim, caused an action to be commenced against them as non-residents and a foreign corporation in the courts of that State by the issuance of a warrant of attachment. The warrant of attachment was, on April 20, 1924, served upon two Rhode Island corporations, claimed to be affiliated with Roberts and the Aracoma Textile Company of New York, as garnishees. The garnisheed Rhode Island corporations bore the names of Aracoma Textile Company of Rhode Island, and the Kenton Company. The Kenton Company it is claimed took its name from E. C. Kenton, president of the Aracoma Textile Company of New York.

On or about May fifth the garnishees filed returns of *nulla*

*bona* in the Rhode Island action. For the purpose of establishing the jurisdiction of the Rhode Island court, and for the further purpose of procuring the disclosure of assets in that State sufficient to respond to the amount specified in the warrant of attachment, the petitioner, as plaintiff in the Rhode Island action, immediately thereafter caused a *dedimus potestatem* to .be issued out of the courts of that State, directed to Roberts and the secretary and treasurer of the New York Aracoma Company, one Reginald B. Hamilton, both residents of New York, to have their testimony taken as witnesses within this State for the mentioned purposes. Upon this *dedimus potestatem* and the petition of the petitioner's attorney, a subpœna was duly issued by a justice of the Supreme Court, directing the examination of Roberts and Hamilton pursuant to sections 310 to 312 of the Civil Practice Act, and ordering the production of certain books and papers therein specified.

After some difficulty and delay the subpœna was finally served on the respective witnesses on September 22 and October 1, 1924. The date of examination fixed in the subpœna so served was October 16, 1924. On October 14, 1924, the witnesses applied to the Supreme Court for the vacatur of the subpœna. The motion was denied by an order entered on October twenty-seventh, which order also directed the examination to proceed on November 6, 1924, before a commissioner designated therein. The examination was commenced before said commissioner on November 20, 1924.

Upon the question of the amount of Rhode Island attachable property belonging to the defendants in the action pending in the courts of that State, the most that can be said to have been definitely admitted by the witnesses in the examination before the commissioner was that the Aracoma Company of New York had a $7,000 claim against the Aracoma Company of Rhode Island, and that various other equities, which the witnesses either could not or would not define, existed between the two companies.

At the conclusion of the examination on November 20, 1924, the record shows no application of any sort was made by the witnesses to the commissioner to terminate it. On the contrary, to quote from the record, " the commissioner instructed both witnesses to appear for further examination on December 4, 1924, at 11:00 A. M."

On November 28, 1924, without making any prior application to the commissioner, the witnesses noticed a motion to the Supreme Court, returnable December 3, 1924, to terminate the said examination on the ground that the examination " developed from the testimony of Walter S. Roberts that the Aracoma Textile Co., Inc.,

18

of New York has a claim against the Aracoma Textile Company of Rhode Island, a Rhode Island corporation, whose principal place of business is in the State of Rhode Island, of upwards of $7,000," and that " this, in itself, is sufficient to confer jurisdiction of the Rhode Island court on the defendant Aracoma Textile Co., Inc.," and that " since the entry of the order [entered October 27, 1924], Walter S. Roberts has been personally served in Rhode Island by the attorneys for the Commercial Credit Company in that State, as was Edwin C. Kenton, president of the Aracoma Textile Co., Inc., of New York."

The court below, by an order entered January 15, 1925, without opinion, granted the motion to terminate the examination " upon condition that within ten days Walter S. Roberts and the Aracoma Textile Co., Inc., enter into a written stipulation with the Rhode Island attorneys for the Commercial Credit Company, that they will plead to the declaration and file such pleas without any plea or objection to the jurisdiction of the Rhode Island court."

From this latter order, granting the witnesses' application to terminate their examination, this appeal is taken.

The examination is for the purpose of discovering property applicable to the levying of plaintiff's attachment in Rhode Island and in this way the dual purpose is sought to be served of establishing the jurisdiction of the Rhode Island court and of disclosing assets in that State sufficient to respond to the amount specified in the said warrant of attachment which is in excess of $22,000.

All that the examination has discovered up to the present time is the existence of a claim of $7,000 for merchandise delivered to the Rhode Island company and not accounted for. The appellant contends that a further examination of Roberts is necessary and will disclose that there is actual property in addition to this claim within the State of Rhode Island belonging to Roberts and the Aracoma Textile Company of New York, who are both defendants in the Rhode Island action.

If the witnesses desired to have their examination terminated they should have applied in the first instance to the commissioner for that relief. The minutes of the examination do not disclose any such application and that the examination was deemed incomplete by the commissioner is evidenced by the concluding entry: " The commissioner instructed both witnesses to appear for further examination on December 4, 1924." A prior application to vacate the subpœna and thus prevent the examination altogether had been denied by the court. From that denial the witnesses took no appeal, and when the present application was made the examination was unfinished.

*Matter of Randall* (90 App. Div. 192) represents a situation quite similar. There, as here, a motion had been originally made to the court by the witness to vacate the subpœna, the motion was denied, and no appeal was taken. When the witness appeared for examination, he refused to obey the commissioner's direction to answer certain propounded questions, just as here the witnesses seek to avoid compliance with the commissioner's order to reappear for examination. In ordering the witness to answer the directed questions, Mr. Justice HATCH, speaking for this court, sustained the regulatory control of commissioners in proceedings of this character. He said (p. 196): " It was said in *Matter of Searls* (155 N. Y. 333) that what questions were pertinent to be propounded upon such an examination were to be determined in the first instance by the commissioner in like manner as such determination would be made by a justice of the peace in a trial before him, and that the commissioner was possessed of the same powers to enforce his decision as is possessed by a justice of the peace. It necessarily follows from this holding that when the commissioner determined that the questions were pertinent and proper and directed the witness to answer, it then became the duty of the witness to give such answer to the question as he was able, and in refusing to do so he was guilty of a contempt. It was said by Mr. Justice PATTERSON in *Matter of Randall* (87 App. Div. 245), which was an appeal from an order directing the deposit of these books with the commissioner: ' If the person producing the books, in obedience to a subpœna, refuses to answer questions passed upon and allowed by the commissioner, and, under such circumstances, refuses to identify the books or the entries therein which are material to the case of the examining party, a remedy is afforded by law.' The question does not turn upon whether the decision of the commissioner is right or wrong, but upon the authority of the commissioner to rule in the premises and to direct the witness to comply with the ruling; when he has done that it becomes the duty of the witness to obey the direction."

It is well settled that in examinations conducted in this State for use without the State, the courts will not prejudge the materiality or the competency of the evidence in a cause pending in another jurisdiction and will afford the widest possible latitude in the conduct of such examinations. (*Matter of Randall, supra; Guenther* v. *Ridgway Co.*, 159 App. Div. 74, 76; *Hyde* v. *Scott*, 75 Misc. 487, 493.)

In *Matter* of *Randall* (*supra*) this court said (p. 197): " We are not, however, called upon to pass upon the competency of the evidence sought to be elicited from the witness, or its admissibility

upon the trial of the action. That will become a matter for determination by the Ohio court when the commission shall be returned to it. For present purposes it is sufficient if it appear that such testimony may be competent, and so far as the examination is not entirely irrelevant to the subject-matter of the action, the court will not, nor is it called upon, to pass upon the strict legality and competency of the evidence sought to be elicited. In the first instance, such questions are left for determination by the commissioner and it is presumed that such officer will limit the examination within legal bounds."

In *Hyde* v. *Scott* (*supra*), SEABURY, J., laid down the same principle in the following language (p. 493): "*Third.* The objection urged that 'this court should not lend its aid to the Canadian court in enforcing an unjust demand against a Canadian stockholder of an American corporation' is peculiarly inept. The very question in issue which is to be determined in the present action in the Canadian court is whether or not the demand of the complaint is just or unjust. This court will not assume to determine this issue and try upon the merits the justice of the complainant's claim. It is enough for us to know that in the judgment of the Canadian courts, the testimony of the witness McNaught is regarded as necessary in order to reach a just determination of the issue raised in this action. The Canadian courts having jurisdiction, and it appearing that the rights of our own citizens are not violated or threatened, the principle of comity should be applied and our courts should facilitate the Canadian courts in the same manner that we must assume the Canadian courts would assist us." (See, also, *Matter of Canter*, 40 Misc. 126, and *Matter of Gleichman*, 123 id. 198, and cases there cited.)

The reason for the enactment of the laws under the authority of which this examination is taken is to be found in principles of comity and it is the policy of our law as expressed in the decisions of our courts to give complete assistance to the court to which we extend such comity.

The competency of the evidence or its admissibility upon the trial of the action are matters for the determination of the Rhode Island court when the commission shall be returned to it, and this court upon a motion to vacate the subpœna or terminate the examination is not required to pass upon the question of the strict legality and competency of the evidence sought to be elicited.

The petitioner seeks not merely to sustain the technical existence of jurisdiction in the Rhode Island court but to disclose the actual existence of property in Rhode Island sufficient to satisfy the full amount of its attachment.

The conditions which the court below imposed when it granted the motion did not aid the petitioner in its effort to obtain evidence of the actual existence of such property.

The papers on appeal show that the examination is sought in good faith and is necessary to the petitioner in the prosecution of the Rhode Island action.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs, and the examination should be directed to proceed at a time and place to be fixed in the order to be entered herein.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs. The date for the examination to proceed to be fixed in the order. Settle order on notice.